**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

No. 25-1298

JEFFREY ALLEN TURNER,

Plaintiff – Appellant,

v.

TOWN OF NARROWS,

Defendant – Appellee.

Appeal from the United States District Court for the Western District of Virginia, at Roanoke.  Elizabeth K. Dillon, Chief District Judge.  (7:23−cv−00371−EKD−CKM)

Submitted:  December 8, 2025                    Decided:  January 28, 2026

Before DIAZ, Chief Judge, and WYNN and HARRIS, Circuit Judges.

Affirmed by unpublished opinion.  Chief Judge Diaz wrote the opinion, in which Judge Wynn and Judge Harris joined.

**ON BRIEF:**  Thomas E. Strelka, VIRGINIA EMPLOYMENT LAW, Roanoke, Virginia, for Appellant.  Jeremy E. Carroll, Julian F. Harf, SPILMAN THOMAS & BATTLE, PLLC, Roanoke, Virginia, for Appellee.

Unpublished opinions are not binding precedent in this circuit.

DIAZ, Chief Judge:

When Jeffrey Turner was sixty years old, he applied to be the Town of Narrows's Parks and Recreation Director. The Town interviewed Turner, but it ultimately hired another applicant in his early twenties. Turner then sued the Town for age discrimination.

The district court granted summary judgment for the Town. It found that Turner hadn't shown that the Town's proffered reason for its decision—that the younger candidate performed better in his interview—was pretext for age discrimination.

We agree that Turner failed to establish pretext. And without it, Turner can't prove that age was the but-for cause of his rejection. So we affirm.

I.

The Age Discrimination in Employment Act "prohibits employers from refusing to hire, discharging, or otherwise discriminating against any person who is at least 40 years of age 'because of' the person's age." *EEOC v. Balt. Cnty.*, 747 F.3d 267, 272 (4th Cir. 2014) (citing 29 U.S.C. §§ 623(a)(1), 631(a)).

To prevail under the Act, the plaintiff must prove by a preponderance of evidence that age was the "but-for" cause of the challenged action. *Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167, 177–78 (2009). "In other words, an employee cannot prevail . . . by showing that age was *one* of multiple motives for an employer's decision; the employee must prove that the employer *would not have* [taken the adverse action] in the absence of age discrimination." *Westmoreland v. TWC Admin. LLC*, 924 F.3d 718, 725 (4th Cir. 2019).

2

The plaintiff may offer either direct or circumstantial evidence to support his claim. *See Gross*, 557 U.S. at 177–78. When analyzing claims based on circumstantial evidence, we use the three-part, burden-shifting framework set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *Westmoreland*, 924 F.3d at 725.

The plaintiff must first establish a prima facie case of discrimination. *See id.* This burden "is not onerous." *Id.* All the plaintiff needs to show is that

> (1) he was a member of a protected class, *i.e.,* that he was at least 40 years old;
> (2) his employer had an open position for which he applied and was qualified;
> (3) he was rejected despite his qualifications; and
> (4) the position remained open or was filled by a similarly qualified applicant who was substantially younger than the plaintiff, whether within or outside the class protected by the [Act].

*Laber v. Harvey*, 438 F.3d 404, 430 (4th Cir. 2006).

Establishing a prima facie case creates a "presumption of discrimination." *Tex. Dep't of Cmty. Affs. v. Burdine*, 450 U.S. 248, 254 (1981). The burden then shifts to the employer to produce evidence of a "legitimate, non-discriminatory reason for the employment action." *Dugan v. Albemarle Cnty. Sch. Bd.*, 293 F.3d 716, 721 (4th Cir. 2002).

If the employer does so, the presumption of discrimination drops from the case. *Westmoreland*, 924 F.3d at 726. And the plaintiff must "prove by a preponderance of the evidence that the legitimate reasons offered by the [employer] were not its true reasons, but were a pretext for discrimination." *Burdine*, 450 U.S. at 253.

3

II.

A.

When the Town of Narrows was looking for a new Parks and Recreation Director, it posted a vacancy announcement online. The announcement specified that the director's duties include "budgeting, capital asset management, revenue collection and accounting, overall management of town parks and recreation areas and facilities, management of existing programs, development of new programming, communication and marketing of programs and activities, fundraising, and public relations." Joint Appendix (J.A.) 7.

The job description also set certain "[m]inimum requirements," including a high school diploma and four years of experience "in parks and recreation or a related field." J.A. 7. The Town "preferred" candidates with a bachelor's degree in a related field. J.A. 7.

The Town received ten applications. Susan Kidd, the Strategic Development Director, and Dakoda Shrader, the outgoing Parks and Recreation Director, selected five candidates to interview: Turner, Landon Patteson, Jeffrey Spicer, William Laws, and Clyde Turner (the plaintiff's older brother). None of the applications met all the criteria in the job posting.

Turner was a high school graduate with approximately three decades of experience with the U.S. Postal Service, during which time he'd taken several continuing education classes. Additionally, Turner served as a part-time official for youth sports and also helped maintain the Town's sports fields.

4

About thirty years before Turner applied for the job, he briefly served as the Town's acting Parks and Recreation Director by "help[ing] with practice . . . answer[ing] the phone if we had a game or something, [and] collect[ing] the money." J.A. 359–60. Turner also served on the Town Council from 1990 to 1998. But he didn't mention either of these experiences in his application.

Patteson was a high school graduate and certified non-electric lineman. He had about two years of experience as a lead 911 dispatcher, and two years as a field technician for telephone and internet companies.

Spicer held associate's degrees in criminal justice and business management, and certifications in auctioneering and marketing. He owned his own auction business and worked as a drug and alcohol tester. Spicer had also volunteered for the Town's fire department for nearly two decades.

Laws held a bachelor's degree in geography and geospatial science. He was an army veteran, former tutoring assistant, and seasonal tram operator. He also spent six and a half years as a correctional officer in a juvenile detention facility, where he supervised recreational activities and events.

Clyde Turner had a high school diploma and one year of college education. He'd been an electric lineman for over three decades. And he had experience as a high school football coach and Town Council member.

Three of the selected candidates—the Turner brothers and Spicer—were forty years or older when they applied. Patteson was in his early twenties.

5

B.

The interview panel consisted of Kidd, Shrader, and two other Town officials: John Davis, the Town's Public Works Director and former Mayor, and Sara Bowles, a Town Council member who also served on the Parks and Recreation Committee. All but Shrader were over forty.[1] Davis and Shrader considered Turner a good friend.

The panelists were uniformly underwhelmed by Turner's interview performance. The consensus was that "it did not appear as [though] he had thought about any questions, any new ideas or . . . things that he may need to work on." J.A. 194.

Bowles recalled that Turner "was very ill prepared," gave generic answers, and only discussed the "recreation" side of the department. J.A. 192–94. Bowles and Kidd were also concerned that Turner only planned to keep the job for a few years,[2] which they felt signaled a lack of investment in the department. Had Turner been the only applicant, Bowles would have recommended the Town "repost and throw a wider net." J.A. 195.

Likewise, Davis felt "like Mr. Turner put in an application and showed up for his interview and was not prepared for it." J.A. 184. For instance, when the panel asked

---

[1] But this fact alone doesn't preclude a finding of discrimination, because it's possible for members of a protected class to discriminate against other members of that class. *See Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 78 (1998) (rejecting "any conclusive presumption that an employer will not discriminate against members of his own [protected group]").

[2] Bowles, Davis, and Kidd testified that Turner told them he only wanted the job for three to five years. Turner insists he told the panel he would stay in the job for five to seven years. The district court determined this factual dispute wasn't material to the summary judgment decision, and we agree. Even if Turner planned to stay in the position for seven years, he still viewed the job as temporary, which concerned the panel.

6

Turner how he would deal with a disgruntled parent, he said, "how I handle it now" and failed to elaborate. J.A. 180–81. Shrader also recalled that Turner said he might sometimes "have to get into [it] with the parent," which worried him. J.A. 45–46. Finally, Kidd emphasized that Turner appeared generally unenthusiastic about the job and neglected to discuss the parks side of the department.

In comparison, Patteson made a positive impression. He described the position as his "dream job" and came to the interview with "written plans of things that he would like to see expanded." J.A. 54. Kidd appreciated Patteson's "enthusiasm, [and the] research he had done on the job and on the actual parks and rec department [and] what it entailed." J.A. 51. Davis said Patteson "seemed like he had really gone out and thought about this position" and came prepared with ideas for both the parks and recreation sides of the department. J.A. 183–84.

Spicer also performed well in his initial interview. The panel credited his "good background in fundraising and . . . holding events around the [Town]," both of which were relevant to the director position. J.A. 44.

The panel invited Patteson and Spicer back for a second interview. Afterward, the Town hired Patteson.

C.

Turner sued the Town for violating the Age Discrimination in Employment Act. The Town moved for summary judgment, which the district court granted.

The district court assumed that Turner established a prima facie case. It then found that the Town provided a legitimate, non-discriminatory explanation for hiring Patteson:

7

he performed better in the interview. And the court determined that Turner failed to demonstrate that this explanation was merely pretext for age discrimination. So the district court concluded that "no reasonable jury could find that age was the but-for cause of the Town's decision not to hire Turner." *Turner v. Town of Narrows*, No. 7:23-cv-00371, 2025 WL 724062, at *8 (W.D. Va. Mar. 6, 2025).

This appeal followed.

### III.

### A.

We review a district court's grant of summary judgment de novo, viewing the facts and drawing inferences in the light most favorable to the non-moving party. *EEOC v. Navy Fed. Credit Union*, 424 F.3d 397, 405 (4th Cir. 2005). Summary judgment is inappropriate if there's a genuine issue of material fact. *See id.*

Still, the non-moving party "may not rest upon the mere allegations or denials of his pleading, but . . . must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) (quoting *First Nat'l Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 288 (1968)). Conclusory allegations are insufficient. *Bandy v. City of Salem*, 59 F.4th 705, 710 (4th Cir. 2023). If the non-moving party presents evidence that is "merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S at 249–50 (citation modified).

8

B.

As did the district court, we assume Turner established a prima facie case of age discrimination.[3] So the burden shifts to the Town to "produc[e] evidence that the plaintiff was rejected, or someone else was preferred, for a legitimate, nondiscriminatory reason." *Burdine*, 450 U.S. at 254.

At this stage, the Town doesn't need to persuade us "that it was actually motivated by the proffered reasons." *Id.* It just needs to provide some explanation that is "legally sufficient to justify a judgment" in its favor. *Id.* at 255.

The Town did so. It explained that it hired Patteson because he outperformed his competitors in the interview. The Town produced deposition testimony showing that Patteson impressed all four panelists with his enthusiasm, research, and ideas for the department. On the other hand, Turner struck the panel as unprepared and unenthusiastic about the job.

C.

Since the Town articulated a legitimate reason for its hiring decision, the burden shifts back to Turner to prove that the proffered explanation was merely pretext for discrimination. *See Burdine*, 450 U.S. at 256.

---

[3] The Town drops a footnote in its brief noting that it doesn't concede that Turner made a prima facie case, but it didn't develop the point further. So that argument is forfeited. *Foster v. Univ. of Md.-E. Shore*, 787 F.3d 243, 250 n.8 (4th Cir. 2015) (a party forfeits an argument on appeal by raising it only in "an isolated footnote").

9

Establishing pretext requires a "new level of specificity" from the plaintiff. *Id.* at 255. The plaintiff must "show that the employer's proffered explanation is unworthy of credence . . . or offer other forms of circumstantial evidence sufficiently probative of intentional discrimination." *Dugan*, 293 F.3d at 721.

To do so, "a plaintiff may show that an employer's proffered nondiscriminatory reasons for the termination are inconsistent over time, false, or based on mistakes of fact." *Haynes v. Waste Connections, Inc.*, 922 F.3d 219, 225 (4th Cir. 2019).

Turner offers two reasons why the Town's explanation was pretextual. We reject both.

### 1.

Turner first claims that the subjective nature of the interview process entitles him to an inference of pretext. He argues that the Town based its decision solely on the panelists' personal views of the candidates' interview skills, rather than on a formal scoring system.

Turner points out that some of our sister circuits infer pretext "when the criteria on which the employers ultimately rely are entirely subjective in nature." Appellant's Br. at 8–9 (quoting *Turner v. Pub. Serv. Co. of Colo.*, 563 F.3d 1136, 1145 (10th Cir. 2009)); *see also Bell v. Bolger*, 708 F.2d 1312, 1319–20 (8th Cir. 1983) (noting that subjective employment practices are "to be closely scrutinized").

But we don't have such a rule. In the racial discrimination context, we've held that while "the use of subjective criteria is relevant," it doesn't prove anything "standing alone." *Mallory v. Booth Refrigeration Supply Co.*, 882 F.2d 908, 910 (4th Cir. 1989). And we've

10

recognized that a candidate's enthusiasm and preparation are valid qualities for an employer to consider. *See Bandy*, 59 F.4th at 712.

An element of subjectivity is inherent in any interview process, but Turner hasn't alleged facts that show the process here was suspect. For example, he doesn't argue that the panelists asked irrelevant questions or that the questions varied greatly between interviews. *See Ham v. Washington Suburban Sanitary Comm'n*, 158 F. App'x 457, 466 (4th Cir. 2005) ("Courts have repeatedly found that an employer's decision to emphasize qualities not pertinent to the job in selecting a candidate is probative of pretext."). The panel invited both Turner and Patteson to discuss their ideas for the department, how long they envisioned staying in the job, and how they would handle conflict, which are all relevant considerations for the position.

Importantly, the panelists all articulated cogent, objective reasons for rejecting Turner. They pointed to Turner's failure to discuss the parks side of the department, his short responses, and his interest in being the director for only a handful of years.[4] Since

---

[4] Shrader and Davis also critiqued Turner's approach to conflict management. This concern, even if based on a subjective assessment, is still a legitimate one.

the panelists considered some objective factors in their assessment, we're satisfied that the process was adequate.

2.

Turner next argues that the Town's explanation was pretextual because he was "vastly more qualified than Patteson." Appellant's Br. at 15.

It's true that a plaintiff can prove pretext by showing that his "qualifications were so plainly superior that the employer could not have preferred another candidate." *Dennis v. Columbia Colleton Med. Ctr., Inc.*, 290 F.3d 639, 648 n.4 (4th Cir. 2002). But "it is the perception of the decision maker which is relevant, not the self-assessment of the plaintiff." *DeJarnette v. Corning Inc.*, 133 F.3d 293, 299 (4th Cir. 1998) (citation modified). A plaintiff's "bald assertions concerning [his] own qualifications" are insufficient to prove that he was the "better qualified candidate for the position sought." *Evans v. Techs. Applications & Serv. Co.*, 80 F.3d 954, 960 (4th Cir. 1996).

Turner's qualifications weren't plainly superior. In fact, neither Turner nor Patteson satisfied all the requirements in the Town's job posting. Neither had the preferred bachelor's degree. Nor did either have the required minimum of four years of experience in parks and recreation or a related field.

Turner did serve briefly as the acting Parks and Recreation Director. But he failed to mention this experience in his written application or interview. We can't fault the Town for not considering something it didn't know about. In any event, the service occurred

12

around thirty years ago, and Turner makes no argument that it constituted four years of experience.

Instead, Turner's application only mentioned his experience as a part-time youth sports official and his time with the U.S. Postal Service. But the former isn't sufficiently connected to the director's essential job duties, as described in the job posting. So it can't satisfy the experience requirement either.

And although Turner claims that "being a postmaster for 14 years is a lot like being a Parks and Rec Director," that's not our call. J.A. 311. We don't act as a "super-personnel department weighing the prudence of employment decisions made by firms charged with employment discrimination." *DeJarnette*, 133 F.3d at 299 (citation modified). So long as the Town used nondiscriminatory criteria, it's not our place to second-guess its choice about what type of work experience is best suited for the role. *See Mereish v. Walker*, 359 F.3d 330, 339 (4th Cir. 2004), *abrogated in part on other grounds by Gross*, 557 U.S. at 177–80; *see also Holdcraft v. County of Fairfax*, 31 F. App'x 97, 99 (4th Cir. 2002) (per curiam).

Since no applicant had four years of relevant experience, the Town had discretion to weigh Turner's postmaster work against Patteson's dispatcher and lineman experience, and decide for itself which candidate was better suited for the job.

And even if Turner was more qualified on paper, the Town ultimately based its decision on interview performance. Turner can't "choose the criteria by which an employer makes [an employment] decision," and he can't "choose the areas in which [he] wants to compete." *Anderson v. Westinghouse Savannah River Co.*, 406 F.3d 248, 270 (4th Cir.

13

2005). Turner hasn't provided any non-speculative evidence that he performed better than Patteson (or any other candidate) in his interview. And that dooms his argument.

Finally, even if Patteson hadn't been offered the position, Turner still wasn't the Town's second choice—the job would have gone to Spicer. This fact further undercuts Turner's argument that he would have gotten the job "but-for" the Town's age bias toward Patteson. *See Bandy*, 59 F.4th at 712 (finding no discrimination in part because the plaintiff "was not even among the top three candidates").[5]

*      *      *

We affirm the district court's judgment. And we dispense with oral argument because the facts and legal contentions are adequately presented in the materials before this court and argument would not aid the decisional process.

*AFFIRMED*

---

[5] Since Spicer was also at least forty years old, the Town takes this argument a step further, arguing that "age could not have been why Turner failed to get the job if another member of the protected class would have gotten the job before him." Appellee's Br. at 23. But that's not right. The key inquiry is whether the plaintiff lost out to a "substantially younger" candidate; it doesn't matter whether that candidate is also in the protected age group. *O'Connor v. Consol. Coin Caterers Corp.*, 517 U.S. 308, 313 (1996).

14