**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

**No. 25-1440**

MITCHELL WATERS,

Plaintiff - Appellant,

v.

THE MAYOR AND CITY COUNCIL OF BALTIMORE,

Defendant - Appellee.

Appeal from the United States District Court for the District of Maryland, at Baltimore.
Albert David Copperthite, Magistrate Judge.  (1:23-cv-01178-ADC)

Submitted:  April 28, 2026                                Decided: June 24, 2026

Before RUSHING and HEYTENS, Circuit Judges, and FLOYD, Senior Circuit Judge.

Affirmed by unpublished per curiam opinion.

**ON BRIEF:**  Dionna Maria Lewis, DISTRICT LEGAL GROUP, PLLC, Washington, D.C., for Appellant. Ebony M. Thompson, City Solicitor, Michael P. Redmond, Chief Solicitor, BALTIMORE CITY LAW DEPARTMENT, Baltimore, Maryland; Eilene Brown, General Counsel, BALTIMORE CITY FIRE DEPARTMENT, Baltimore, Maryland, for Appellee.

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

Plaintiff-Appellant Mitchell Waters brought five employment discrimination claims against his employer arising from disciplinary actions. The district court granted summary judgment to Defendant-Appellees the Mayor and City Council of Baltimore (hereinafter "Baltimore" or "the City") on all claims. We affirm in full.

## I.

Waters is a Black man employed by the Baltimore City Fire Department (BCFD). The thrust of Waters's complaint is that he was treated less favorably than non-Black peers when he was subject to BCFD's disciplinary process. As a result, he sued the City for race discrimination, hostile work environment, and retaliation under Title VII, 42 U.S.C. §§ 1981–83, and the Maryland Fair Employment Practices Act (MFEPA). Following the district court's decision on summary judgment, he timely appealed to this Court. We dispense with oral argument because the facts and legal contentions are adequately presented in the materials before this court and argument would not aid the decisional process.

## II.

We review the district court's decision on summary judgment *de novo*. *Bandy v. City of Salem*, 59 F.4th 705, 709 (4th Cir. 2023). Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). We construe all facts and

2

make reasonable inferences in favor of the nonmovant.  *Bandy*, 59 F.4th at 709.  But "[t]he mere existence of a scintilla of evidence," *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986), or "conclusory allegations or denials, without more," *Wai Man Tom v. Hosp. Ventures LLC*, 980 F.3d 1027, 1037 (4th Cir. 2020), are insufficient to defeat summary judgment.

### III.

We first analyze Waters's race and color discrimination claim.  We then turn to his hostile work environment claim.  Finally, we address his retaliation claim.  We affirm the district court in full.[1]

Waters's complaint raised his claims under three statutes: Title VII, §§ 1981–83, and MFEPA.  Courts apply the same analytical framework for claims under all three statutes.  *See Gairola v. Va. Dep't of Gen. Servs.*, 753 F.2d 1281, 1285 (4th Cir. 1985) ("Under Title VII and either § 1981 or § 1983, the elements of the required prima facie case are the same."); *Haas v. Lockheed Martin Corp.*, 914 A.2d 735, 742 & n.8 (Md. 2007) (noting that MFEPA and Title VII are analogs and that Maryland state courts "traditionally

---

[1] At summary judgment, the City argued that Waters failed to exhaust administrative remedies as to particular allegations in his complaint.  The district court correctly rejected Waters's sole counterargument that the City waived the defense by failing to raise it in the pleadings.  On appeal, Waters changes tack and argues only that these incidents represent continuing violations under *National Railroad Passenger Corp. v. Morgan*, 536 U.S. 101 (2002).  This argument is waived based on Waters's failure to raise it before the district court.  *See Arakas v. Comm'r, Soc. Sec. Admin.*, 983 F.3d 83, 105 (4th Cir. 2020) ("Generally, parties waive appellate review of any issue not raised below.").

seek guidance from federal cases in interpreting [MFEPA]").  Accordingly, we assess all claims by reference to Title VII's framework.

## A.

The district court correctly granted summary judgment to Baltimore on Waters's race and color discrimination claim.  Waters claims that he was treated differently than similarly situated individuals outside of his protected class, in that (1) non-Black employees "engaged in more serious misconduct but faced either no disciplinary action or significantly less severe consequences," (2) BCFD did not investigate complaints he made while it did investigate claims made by non-Black employees, and (3) other Black employees experienced similar disparate treatment.  Opening Br. at 31–32, 35.  A prima facie case of discrimination based on disparate treatment requires showing "(1) membership in a protected class; (2) satisfactory work performance; (3) [an] adverse employment action; and (4) different treatment from similarly situated employees outside the protected class." *Perkins v. Int'l Paper Co.*, 936 F.3d 196, 207 (4th Cir. 2019).  Though the City says Waters failed to establish both prongs three and four, we focus our review on prong four and find that Waters fails to establish a genuine issue of material fact as to whether he was treated differently than comparable non-Black employees.

Waters's briefs fail to develop his argument.  Waters identifies what he claims are examples of disparate treatment via numbered lists of factual allegations, but his argument is devoid of any reference to legal authority (or explanation whatsoever) demonstrating how these examples represent truly comparable conduct absent mitigating circumstances.

4

*See Haynes v. Waste Connections, Inc.*, 922 F.3d 219, 223–24 (4th Cir. 2019) (requiring a plaintiff to show that "the prohibited conduct in which he engaged was comparable in seriousness to misconduct of other employees outside the protected class who received less severe discipline" and the absence of "differentiating or mitigating circumstances that would distinguish their conduct or the employer's treatment of them for it").

Waters lists five examples of disparate treatment concerning himself and a comparator and four additional examples concerning other Black employees and non-Black comparators. Because the examples concerning other Black employees are not properly considered for summary judgment, we limit our analysis to the five examples concerning Waters.[2]

We begin with Waters's first two examples. Perplexingly, both examples concern essentially the same incidents—Waters compares BCFD's response to complaints of workplace violence made by him and made against him by non-Black employees. Waters complains that BCFD delayed one week in formally responding to his complaint, whereas non-Black employees, "when similarly situated, had their complaints of misconduct,

---

[2] Waters says that other Black employees "experienced similar discriminatory acts," and lists four incidents. Opening Br. at 35. But Waters points only to his own unverified complaint as evidence of each of these incidents. Neither Rule 56 nor our Circuit's precedent allow a non-movant to "rely on matters pleaded in the complaint" to defeat summary judgment, except where the complaint is verified, in which case it is treated like an affidavit. *See Goodman v. Diggs*, 986 F.3d 493, 498 (4th Cir. 2021) (citation modified); Fed. R. Civ. P. 56(c)(1) (listing materials which may support factual positions and omitting pleadings). Waters's complaint is not verified, but even if it were verified, it is not clear how the allegations related to *other* firefighters were "made on personal knowledge" or "would be admissible in evidence." *See* Fed. R. Civ. P. 56(c)(4). Accordingly, we do not consider these examples.

harassment, and/or workplace violence investigated immediately." Opening Br. at 32. But Waters fails to identify the comparable time period that elapsed before the comparison complaints were filed. Even if we assume the comparison complaints were filed the very instant the complainant reported each incident to a supervisor, we fail to see how this difference in timing is even relevant. A showing of disparate treatment requires that Waters and a comparator engaged in conduct of comparable seriousness but the comparator "received less severe discipline." *Haynes*, 922 F.3d at 223. Waters fails to explain how a weeklong delay related to filing paperwork represents less severe discipline, and we decline to make this argument on his behalf. *See Hensley ex rel. North Carolina v. Price*, 876 F.3d 573, 580 n.5 (4th Cir. 2017).

Waters's third example alleges that he "had late charges filed against him while transferring from one station to the next" while two non-Black firefighters "were both late under identical circumstances." Opening Br. at 32–33. We see at least two issues with this seemingly straightforward example. First, Baltimore points out that Waters never actually received late charges and Waters concedes as much. Waters does not explain how *attempted* "late charges" constitute an adverse employment action at all, and we cannot divine how this might impact the "terms, conditions, or benefits of [his] employment." *See Von Gunten v. Maryland*, 243 F.3d 858, 865 (4th Cir. 2001) (citation modified). Second, Waters cites only to his complaint and interrogatory responses. Of course, interrogatory responses can support a factual assertion, Fed. R. Civ. P. 56(c)(1)(A), but Waters must point to more than "conclusory allegations, mere speculation, the building of one inference upon another, or the mere existence of a scintilla of evidence," *Dash v. Mayweather*, 731

6

F.3d 303, 311 (4th Cir. 2013). Reading the complaint and his interrogatory responses, it is not clear how Waters's allegations regarding the other firefighters are based on his own personal knowledge or documentary evidence as opposed to mere speculation. Waters does not explain how he knows that no supervisor made any comment about his peers' lateness, and he cites no corroborating evidence, e.g., deposition testimony or time cards, related to any of the comparator firefighters.

In his fourth example, Waters points to EVD Coster, a white employee, who was not subject to discipline following a complaint by Waters. But Waters fails to establish how the conduct by Coster for which he was not subject to discipline is "comparable in seriousness" to any conduct for which Waters did receive disciplinary action. *See Haynes*, 922 F.3d at 223. Indeed, Waters does not even specify which conduct we are meant to compare.

Waters's last example concerns "anonymous, racist, and threatening messages" he received. Opening Br. at 33. Waters claims "no investigation or intervention was conducted," and again points to complaints by Lt. Cole and Lt. DiRusso which he says "were investigated immediately." *Id.* Although these anonymous racist messages are disturbing, the anonymity renders this conduct incomparable to the other complaints. Waters characterizes BCFD's actions in response to the anonymous messages as "Smoke and Mirrors," "half-hearted," and "inauthentic." *Id.* at 34. But Waters does not identify any other instance where BCFD undertook a more serious or rigorous investigation after a peer was subject to anonymous harassment. We cannot find that BCFD's prompt

7

investigation of a complaint identifying a specific employee is comparable to its response to a complaint regarding anonymous conduct.

Because Waters does not sufficiently establish that he was treated differently from similarly situated employees outside the protected class, he fails to make a prima facie case of race discrimination under any of the relevant statutes. *See Perkins*, 936 F.3d at 207. Thus, the district court correctly granted summary judgment on this claim.

### B.

The district court also correctly granted summary judgment to the defendants on Waters's hostile work environment claim. To state a claim for hostile work environment, Waters must establish that "(1) [he] experienced unwelcome harassment; (2) the harassment was based on . . . race[] . . . ; (3) the harassment was sufficiently severe or pervasive to alter the conditions of employment and create an abusive atmosphere; and (4) there is some basis for imposing liability on the employer." *Bass v. E.I. DuPont de Nemours & Co.*, 324 F.3d 761, 765 (4th Cir. 2003).

Waters fails to create a genuine dispute of material fact as to the claimed harassment, either in that he does not connect the conduct to race or he does not establish that it is imputable to BCFD. To support the nexus to race, Waters essentially points only to his disparate treatment argument. We found that the record does not support this theory, and neither does it support the nexus to Waters's protected status needed for his hostile work environment claim. Only the anonymous racist text messages Waters received are related to his race, but as the district court correctly noted, Waters was "unable to link [the

8

messages] to any of his coworkers," J.A. 1257, and he does not establish how the messages are imputable to BCFD. "An employer may be held liable for a hostile work environment if it knew or should have known about the harassment and failed to take effective action to stop it by responding with remedial action reasonably calculated to end the harassment." *Webster*, 38 F.4th at 415 (citation modified). The text messages were sent anonymously, and BCFD did undertake an investigation to attempt to identify the sender. Therefore, the district court did not err in granting judgment on the hostile work environment claim.

## C.

Finally, we affirm the district court's judgment on Waters's retaliation claim. This claim requires that Waters prove "(1) that he engaged in protected activity, (2) that the employer took a materially adverse action against him and (3) there is a causal connection between the protected activity and the adverse action." *Perkins*, 936 F.3d at 213. After articulating the legal standards governing retaliation claims for more than three pages, with respect to his own claim, Waters says merely that the district court erred by failing to "view the evidence and draw all reasonable inferences in the light most favorable to Mr. Waters," because he has created a genuine issue of material fact as to the causal connection between the protected activity and adverse actions alleged. Opening Br. at 52. "We deem this perfunctory and undeveloped claim waived." *Russel v. Absolute Collection Servs., Inc.*, 763 F.3d 385, 396 n.* (4th Cir. 2014); *see also* Fed. R. App. P. 28(a)(8)(A) (requiring an appellant to contain specifically in the argument section of his brief his "contentions and

the reasons for them, with citations to the authorities and parts of the record on which the appellant relies").

IV.

For the foregoing reasons, the judgment of the district court is

*AFFIRMED.*